<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| GRANGE INSURANCE COMPANY, | : | |
| | : | **Civil Action No. 21-11928-MCA-AME** |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION & ORDER** |
| | : | |
| STEVEN HANKIN, et al., | : | |
| | : | |
| Defendants. | : | |

**<u>ESPINOSA</u>**, Magistrate Judge

Plaintiff Grange Insurance Company f/k/a Grange Mutual Casualty Company ("Grange") brings this motion for an order granting alternative service of process on defendant Yoel Romero ("Romero"), pursuant to Federal Rule of Civil Procedure 4(e)(1). Specifically, Grange requests that the Court authorize Rule 4 service on Romero by delivering the Summons and Complaint to his attorney of record in two related lawsuits brought by Romero, including the action out of which this case arises. The Court has reviewed the submissions by Grange in support of this unopposed motion and, for the following reasons, grants the motion.

**I.    BACKGROUND**

Grange filed this action seeking a declaratory judgment concerning its coverage obligations in connection with a lawsuit captioned *Romero v. Goldstar Performance Products*, an action docketed in the Superior Court of New Jersey as MID-L-7287-17 (the "Underlying Litigation"). The Complaint in this declaratory judgment action names the following defendants: Steve Hankin, Jason Wolff, Gold Star Distribution LLC d/b/a Goldstar Performance Products ("Goldstar"), and Romero.

According to the Complaint, Grange issued a businessowners' insurance policy to Hankin and Wolff for a business with a single location in Smyrna, Georgia, for the time period September 16, 2015 through September 16, 2016 (the "Policy"). The Complaint alleges that although Goldstar is owned and/or operated by Hankin and Wolff, Goldstar is a New Jersey-based limited liability company, not a Georgia-based business, and was neither identified in the insurance application submitted to Grange by Hankin and Wolff nor included in the Policy's declarations. The Complaint further alleges Grange is not, and was not at the time the Policy issued, authorized to write insurance in the State of New Jersey. Additionally, the Complaint asserts the Policy was canceled, effective January 7, 2016. The sole claim in this lawsuit seeks judgment declaring that Grange it is not obligated to defend or indemnify Hankin, Wolff, and/or Goldstar against the Underlying Litigation.[1] Romero has been named as an interested party.

In the Underlying Litigation, Romero, a professional mixed martial arts fighter for the Ultimate Fighting Championship association ("UFC"), sued Goldstar for damages resulting from his six-month suspension from the UFC, effective January 12, 2016, after Romero tested positive for a banned substance known as Ibutamoren. Romero alleged he consumed Goldstar's "Shred Rx" nutritional supplement product in reliance on its representation that the product did not contain Ibutamoren. On June 3, 2019, the Superior Court of New Jersey entered default judgment against Goldstar in the amount of $27,653,147.80. According to the Underlying Litigation's docket report, submitted by Grange with this motion, execution proceedings in the Underlying Litigation have remained ongoing, at least through 2021.

---

[1] Wolff was voluntarily dismissed without prejudice on December 2, 2022.

Romero initiated a second, related action in New Jersey state court, to recover the Underlying Litigation judgment, at least up to the Policy limits, from insurance broker The Mallory Agency ("Mallory"), alleging Mallory had committed malpractice in obtaining insurance coverage for Goldstar (the "Mallory Action"). On October 13, 2020, the Mallory Action was removed to this Court, where it was assigned Civil Action No. 20-14335. Following active litigation, including a court-ordered settlement conference, the Mallory Action reached a negotiated resolution. It was accordingly dismissed on February 1, 2022, by Stipulation and Order entered by the Honorable Zahid N. Quraishi.

While the Mallory Action was pending, Grange filed this declaratory judgment action, on May 28, 2021.[2] Between that date and the filing of this motion, Grange has made numerous attempts to serve Romero. The account of those attempts is set forth in great detail in the submissions filed in support of this motion. (*See, generally*, ECF 15 at 3-16.) While the Court will not repeat each and every instance, it summarizes Grange's efforts as follows:

On June 1, 2021, Grange mailed the Summons, Complaint and Request for Waiver of Service to Romero at 20000 SW 130th Avenue, Miami, Florida, listed as Romero's address in the Complaint filed in the Underlying Litigation. The mailing was returned, unclaimed and unable to forward, even though Grange's attorney later confirmed with counsel for Mallory that this same address had been provided for Romero in the Mallory Action. Throughout June and July 2021, Grange attempted to communicate by email and phone with New Jersey attorney Jeffrey S. Craig, of the law firm Craig, Annin & Baxter, LLP, who represented Romero in both

---

[2] Grange alleges it first learned of the Underlying Litigation from Mallory in or about January 2020 and thereafter sent Hankin and Wolff a Reservation of Rights letter, dated March 9, 2020.

the Underlying Litigation and the then-ongoing Mallory Action. It sent Mr. Craig the Complaint and a waiver of service form, and asked whether he would accept or waive service on behalf of Romero. Mr. Craig did not respond to any of the messages. Beginning in August 2021, Grange successively hired two process servers. The process servers repeatedly visited multiple addresses in Florida associated with Romero through a skip trace and other investigations. These visits included one on August 21, 2021, to the 130th Street address in Miami, where the current tenant reported Romero had moved out three years prior. That same month, the process server also attempted to locate Romero at 22301 SW 149th Avenue, Miami, Florida, an address the process server believed to be his actual place of residence, but the process server could not access the main entrance due to "vicious dogs" on the gated property. Process servers made several more unavailing visits to that property. Ultimately the second process server retained by Grange in November 2021 was able to speak to the caretaker of the premises, who denied Romero resided there. Other addresses were developed in the investigation, including one associated with a limited liability company, Soldier of God, of which Romero is a member. There, the process server spoke with a woman identified as Romero's ex-wife, who claimed not to know his whereabouts. Then, in or about December 2021, Grange retained private investigator, Dyer P.I. and Associates ("Dyer"), in a further effort to locate Romero. According to Dyer's affidavit "numerous searches were conducted through different databases by using the name, social security number and date of birth for Mr. Romero, which revealed different addresses associated to him, but [investigators] were informed he was not living at any of them." (Ex. M.) Among other efforts, Dyer confirmed Romero's vehicle is registered to the 149th Avenue address and attempted to locate Romero there, but she was unable to enter the gated property. Telephone

contact with an occupant of the property failed to reveal any information about Romero. Dyer visited multiple properties, including another deeded to Solider of God, where she encountered Romero's former girlfriend, a Ms. Martinez. According to Dyer, Ms. Martinez refused to provide information about Romero, claiming she did not know where he was and declining to confirm whether she paid him rent for occupying the property.

Despite these exhaustive efforts, Grange has thus far been unable to effect service on Romero. Pursuant to Federal Rule of Civil Procedure 4(m), and based on its demonstration of good cause, Grange has obtained two extensions of time to serve process on Romero. Grange filed this motion for alternative service on February 11, 2022, the date the second extension was due to expire.

## II. DISCUSSION

In this motion, Grange seeks an order authorizing alternative service on Romero by sending the Summons and Complaint to Jeffrey S. Craig, Romero's attorney in the Underlying Litigation and the Mallory Action.

Federal Rule of Civil Procedure 4(e) generally governs service of process on a person within the United States. It provides, in relevant part that "an individual . . . may be served in a judicial district of the United States by . . . following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). The service rules of this Court's forum state, New Jersey, provide that the primary method of service on an individual is personal service. *See* N.J. Ct. R. 4:4-4(a). However, when personal service cannot be accomplished, New Jersey's rules also allow substitute modes of service, including service by simultaneous regular mail and

5

certified or registered mail. *See* N.J. Ct. R. 4:4-4(b). The rules further provide that if service cannot be made by any of the modes provided thereunder, "any defendant may be served as provided by court order, consistent with due process of law." N.J. Ct. R. 4:4-4(b)(3).

Before the Court may authorize alternative service under New Jersey law, it must be satisfied personal service cannot be made "despite diligent effort and inquiry." N.J. Ct. R. 4:4(b). This demonstration must be made by affidavit of the plaintiff, plaintiff's attorney, or agent of the plaintiff's attorney, "fully specifying the inquiry made, of what persons and in what manner, so that by the facts stated therein it may appear that diligent inquiry has been made for the purpose of effecting actual notice." N.J. Ct. R. 4:4-5(b). Regarding this standard, the Appellate Division of the New Jersey Superior Court has held: "There is no objective formulaic standard for determining what is, or is not, due diligence. Instead . . . due diligence is measured by the qualitative efforts of a specific plaintiff seeking to locate and serve a specific defendant." *Modan v. Modan*, 327 N.J. Super. 44, 48 (App. Div. 2000) (internal citations and quotations omitted); *see also J.C. v. M.C.*, 438 N.J. Super. 325, 331 (Ch. Div. 2013) ("In short, a plaintiff must demonstrate a good faith, energetic effort to search and find a defendant whose address is unknown, or who is allegedly evading service, before resorting to alternate means of substitute service."). Applying New Jersey's service rules, this district has likewise observed that due diligence does not require a plaintiff to "take every conceivable action" to locate a defendant. *Guardian Life Ins. Co. of Am. v. Crystal Clear Indus.*, No. 11-3062, 2012 WL 1884003, *5 (D.N.J. May 22, 2012) (citing *Modan*, 327 N.J. Super. at 48-49).

Here, the Court is satisfied Grange has made a good faith, diligent, and determined effort to effect service on Romero. Grange's written support of its motion details numerous attempts to

serve Romero by a variety of means throughout 2021, including attempts to effect personal service at addresses where he was believed to reside. It recounts the many steps taken by Grange, through its counsel, process servers, and a personal investigator, to locate Romero in Florida, and that numerous calls and emails by Grange's counsel to Romero's attorney in two other related cases went unanswered. As required by New Jersey Court Rule 4:4(b), the motion is supported by an Affidavit of Diligent Inquiry made by Dyer, the personal investigator hired by Grange's attorney for assistance with service, which relates her efforts to locate Romero, by running searches through multiple databases, personally visiting addresses developed in those searches, and interviewing persons found at those addresses. The Court finds that the exhaustive efforts by Grange Insurance certainly meet, if not exceed, its obligation of diligent inquiry under New Jersey's substituted service rule.

Having found Grange has demonstrated a diligent inquiry and effort to locate and serve Romero, the Court turns to evaluate whether the alternative means of service proposed by Grange comports with due process. *See* N.J. Ct. R. 4:4-4(b)(3); *see also Guardian Life Ins. Co. v. Estate of Walter Matesic*, No. 16-643, 2016 WL 3763340, at *2 (D.N.J. Jul. 14, 2016) (applying New Jersey rule on substitute service and noting "[w]here the plaintiff has demonstrated reasonable diligence, a court may order an alternative means of service that is consistent with due process."). The United States Supreme Court has held that while personal service is not indispensable, constitutional notions of due process fundamentally require "the opportunity to be heard." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (quoting *Grannis v. Ordean*, 234 U.S. 385, 394 (1914)). Thus, to comply with due process, the proposed method of service must provide "notice reasonably calculated, under all the circumstances, to

apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* Applying this principle in the context of reviewing the propriety of alternative service outside the United States, the Ninth Circuit has noted that "courts have authorized a wide variety of alternative methods of service including publication, ordinary mail, mail to the defendant's last known address, delivery to the defendant's attorney, telex, and most recently, email*." Rio Properties, Inc. v. Rio Int'l. Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002).[3]

Grange asks the Court to authorize service of process on Romero by delivering a copy of the Summons and Complaint to attorney Jeffrey S. Craig. Mr. Craig, a member of the Bar of the State of New Jersey and of the Bar of the District of New Jersey, has represented Romero in two lawsuits related to this action. He continues to serve as counsel of record in the Underlying Litigation, where execution proceedings appear to remain ongoing. In the Mallory Action, which was closed only two months ago, Mr. Craig appeared before the District Court in Trenton on Romero's behalf, participating in court-ordered conferences, and filing motions for the pro hac vice admission of attorneys Daniel Fleck and Michael Lutz.[4] Counsel appeared for Romero in the settlement conference conducted by the Honorable Tonianne Bongiovanni on December 6, 2021. As recently as January 31, 2022, the docket of the Mallory Action reflects Mr. Craig's filing of a Stipulation of Dismissal with Prejudice, which he had signed on behalf of his client Romero.

---

[3] Though service outside the United States is governed by Rule 4(f), not subsection (e) applicable to service in the United States, the Ninth Circuit held that service abroad must likewise "comport with constitutional notions of due process." *Rio Properties*, 284 F.3d at 1016.

[4] Mr. Fleck, of The Spence Law Firm in Jackson, Wyoming, also appeared for Romero in the Underlying Litigation.

On this record, which demonstrates a long-standing and ongoing attorney-client relationship between Mr. Craig and Romero, in litigation related to this action, the Court finds that the alternative service proposed by Grange complies with due process. Providing Mr. Craig, an officer of this Court, with a Summons directed to Romero and a copy of the Complaint in this action, with instructions that he transmit them forthwith to Romero, would be reasonably calculated to give Romero adequate notice that he has been named as a defendant in this litigation and afford Romero an opportunity to defend against the claims.[5]

### III.  CONCLUSION AND ORDER

For the foregoing reasons, this Court finds that Grange has demonstrated that an order authorizing alternative service on defendant Romero is warranted. It further finds that service of process on Romero by delivering the Summons and Complaint to Romero's attorney Jeffrey S. Craig, by regular mail, certified mail, and email, is consistent with due process. Accordingly,

**IT IS** on this 23rd day of March 2022,

**ORDERED** that the motion by plaintiff Grange Insurance Company for an order authorizing alternative service on defendant Yoel Romero [D.E. 15] is **GRANTED**; and it is further

**ORDERED** that pursuant to Federal Rule of Civil Procedure 4(e) and New Jersey Court Rule 4:4-4(b)(3), the Court authorizes service of process on defendant Yoel Romero by delivering the Summons and Complaint to attorney Jeffrey S. Craig, of the law firm Craig, Annin & Baxter, LLP, by regular mail, certified mail, and email; and it is further

---

[5] Indeed, given the multiple emails and calls by attorneys for Grange apprising Mr. Craig of this action while Romero was actively litigating the Mallory Action in this District, there is a strong basis to surmise that Romero is likely already well-aware of this litigation.

**ORDERED** that Grange Insurance Company shall provide Mr. Craig a copy of this Order with such service; and it is further

**ORDERED** that Grange Insurance Company shall file proof of service on the docket within seven days of effecting service on defendant Yoel Romero, as authorized by this Order; and it is further

**ORDERED** that, pursuant to Federal Rule of Civil Procedure 4(m), the time for serving defendant Yoel Romero is extended by 90 days, *nunc pro tunc*, from February 11, 2022.

    /s/ *André M. Espinosa*
ANDRÉ M. ESPINOSA
United States Magistrate Judge